UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR07-051S |
| | ) | |
| RIGOBERTO LOPEZ-FUENTES | ) | |

---

# MOTION FOR SENTENCE CONSIDERATION

Now comes Rigoberto Lopez-Fuentes, the Defendant in the above captioned matter, and moves this Honorable Court, pursuant to Local Rule of Criminal Procedure 32 (2006), to consider and impose a sentence that is sufficient, but not greater than necessary, in compliance with18 U.S.C. § 3553(a), and below the suggested advisory guideline range. After considering all the appropriate information present in this case, the Court should conclude that the advisory guidelines call for a sentence significantly longer than necessary. Mr. Lopez-Fuentes requests the Court impose a sentence of 24 months incarceration followed supervised release with the appropriate conditions. Under the unique circumstances presented here, this sentence will be sufficient to satisfy the purposes of sentencing.

Respectfully submitted
Rigoberto Lopez-Fuentes
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was filed electronically with a copy to Heather McLoughlin, United States Probation Officer, and Sandra Beckner, Assistant United States Attorney, on November 21, 2007.

/s/ Kevin J. Fitzgerald

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR07-051S |
| | ) | |
| RIGOBERTO LOPEZ-FUENTES | ) | |

---

## REDACTED MEMORANDUM IN SUPPORT OF SENTENCING

### I. Introduction

Mr. Lopez-Fuentes respectfully submits this memorandum to assist the Court in determining a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a) (2005). Additionally, Mr. Lopez-Fuentes submits this memorandum in support of his Motion for Sentencing Consideration advocating for a sentence below the suggested guideline range. The Court is required to sentence a defendant below the advisory guideline range if such a sentence is sufficient to achieve the purposes of sentencing. *Id.* Mr. Lopez-Fuentes requests the Court to impose a sentence of 24 months in prison followed by supervised release; a sufficient sentence to adequately addresses society's needs under § 3553(a) in this instance without being longer than necessary.

### II. Factual and Procedural Background

On August 30, 2006, the government became aware of Mr. Lopez-Fuentes's presence in the United States and realized that he was an alien who had been previously deported. The State of Rhode Island held him in custody at that time. The government took Mr. Lopez-Fuentes into federal custody on February 22, 2007. Mr. Lopez-Fuentes appeared initially before this Court on March 14, 2007. The government filed a complaint alleging illegal reentry, Mr. Lopez-Fuentes waived the grand jury process and he was arraigned on the one count information herein. On April 12, 2007, Mr. Lopez-Fuentes appeared before the Court and pled guilty to the charge of illegally reentering the

United States after deportation. Sentencing is scheduled for November 30, 2007.

III. Sentencing Considerations

A. General

The Court takes guidance in sentencing from 18 U.S.C. § 3553(a). The statute instructs the district court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing listed in subsection (a)(2).[1] The district judge must assess, analyze and consider the particular facts of the present offense and the unique characteristics of the defendant before the court. 18 U.S.C. § 3553(a)(1). The judge then uses that individual information to determine an appropriate sentence.

Under the statute, the Court must also consider general information including the types of sentences available and the advisory guideline range. 18 U.S.C. § 3553(a)(4) & (5). Congress tasked the Sentencing Commission to develop guidelines for "categories of offenses" and "categories of defendants," (28 U.S.C. § 994(c) & (d)), in a manner consistent with 18 U.S.C. § 3553(a)(2). 28 U.S.C. § 991(b)(1)(A). The Commission was not instructed, however, to weigh individual characteristics or effectuate the parsimony principle into the guidelines.

The First Circuit has held that the advisory guideline range in an individual case is not just a mere factor in the § 3553(a) list. *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006); *see also United States v. Thurston*, 456 F.3d 211, 215 (1st Cir. 2006), *United States v. Smith*, 445 F.3d 1, 4(1st Cir. 2006). The Court reasoned the guidelines should carry more weight than the other considerations because they "represent the only integration of the multiple sentencing factors set forth in § 3553(a), often reflect past practice, and bear the imprimatur of the Sentencing Commission." *Thurston*, 456 F.3d at 215 (quoting *Smith* 445 F.3d at 4). Despite the declaration of heightened importance, the guidelines still reflect generalizations in sentencing. *Jimenez-Beltre*, 440 F.3d at 518. While this standard has prevailed since *United States v. Booker*[2], the decision in *Rita*

---

[1] The statute requires the sentence to reflect the basic aims of sentencing, including just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

[2] 543 U.S. 220 (2005).

*v. United States*[3] clearly shows that the heightened importance guidelines-centric method is unconstitutional.

The United States Supreme Court sought to clarify post-*Booker* sentencing in *Rita*. It held that a district court could not apply a presumption of reasonableness to suggested advisory guideline ranges. *Rita*, 2007 U.S. LEXIS 8269, **16-17, **25. The Court reserved a non-binding rebuttable presumption on appellate review reasoning that if the Commission and sentencing court arrived at the same sentencing range independently then that decision should be accorded some deference. *Id.* at **16-19. That holding conflicts with First Circuit practice, and local practice here in the District of Rhode Island, because *Jimenez-Beltre*, *Smith*, and *Thurston* value the advisory guideline more than the sentencing court's own assessment under § 3553(a).

The basis for the heightened importance standard is flawed. The Commission aspired to integrate the factors of § 3553(a) into the guidelines, but the statute, 28 U.S.C. § 991(b)(1)(A), only obligates them to incorporate the purposes for sentencing under § 3553(a)(2). Further, the guidelines simply cannot incorporate the parsimony principle, the unique character of the defendant, or the unique facts of the offense into the guidelines. The Commission studied pre-guidelines sentencing practices in an effort to place a sentencing value on certain crimes and mitigating or aggravating factors. *See* U.S.S.G. § 1A1.1 (Part A, 3). Today, however, the resulting guidelines rarely reflect past practices. For example, the guidelines did not account for the blanket increase in time of incarceration due to the abolition of parole. Also, the entire controlled substance guideline framework in U.S.S.G. § 2D1.2 merely parrots the mandatory minimum sentences in the 1986 Anti-Drug Abuse Act (now 21 U.S.C. § 841). Third, the career offender enhancement is entirely a creation of the Commission and has no past on which to rely.[4] As for the Commission's imprimatur as the expert body on sentencing, its complete repudiation of the crack cocaine guidelines has not resulted in significant change, which brings into question the Commission's actual power and influence. Lastly, the Commission is tasked to continue studying sentencing and adjust the

[3] 551 U.S. ___, 2007 U.S. LEXIS 8269 (2007).

[4] Congress directed the Commission to sentence certain career offenders to incarceration at or near the maximum penalty as part of the creation of the guidelines. 28 U.S.C. § 994(h). As a creature of the guidelines, the Commission could not incorporate past practice.

guidelines as necessary. *See* 28 U.S.C. § 994(o); U.S.S.G. § 1A1.1. Those adjustments have resulted in over 700 amendments since 1987, with only a handful resulting in lower guideline ranges. Under these circumstances, holding the advisory guidelines in higher regard than the other § 3553(a) considerations undermines the sentencing process.

The sentencing judge is in the best position to accurately and efficiently determine the appropriate sentence in an individual case. Congress has charged the district court with that duty. 18 U.S.C. § 3553(a). Only the judge can assess the character and background of an individual. Only the judge can enforce the parsimony directive. Only the judge can look the defendant in the eye at sentencing. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). While the advisory guidelines continue to be part of the sentencing process, they cannot occupy the preeminent position due to their deficiencies. The sentencing court must "calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without a thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007) (interpreting *Rita).* This Court must determine the appropriate sentence, one that is sufficient but not greater than necessary, by incorporating all of the considerations under § 3553(a).

B. Criminal Record and Guideline Criminal History

Mr. Lopez has three contacts on his criminal record which contribute points towards his criminal history category as calculated under the advisory sentencing guideline. One of those contacts serves as the basis for an extreme increase in the calculation of his offense level. The combination of these factors under the guidelines provide a graphic example of the unreasonable nature of the guideline for illegal reentry offenses.

1. History and Background of Illegal Reentry Guideline, U.S.S.G. § 2L1.2

Nothing in the Sentencing Commission's documentation provides a reasonable explanation for the harshness on the sentences recommended for illegal aliens returning to the United States

without permission. The original guideline provided for a base offense level of 6 with a 2 point enhancement if the defendant had a prior like conviction, and it allowed the sentencing court to consider an upward departure based on the defendant's prior convictions. U.S.S.G. § 2L1.2 (1987). The Commission amended the guideline the next year by increasing the base offense level from 6 to 8, and it deleted application to petty offenses. U.S.S.G. App. C, Amend. 38 (1988). In 1989 the Commission amended the guideline to include a 4 point enhancement for a felony conviction prior to deportation, and still encouraged an upward departure if the defendant's prior felony was particularly egregious. U.S.S.G. App. C, Amend. 193 (1989). This amendment also provided for the double counting of an alien's prior convictions when calculating the offense level and the criminal history. *Id*. The Commission's reasoning did not provide any explanation for the change.

In 1991 the Commission first introduced the 16 point enhancement for prior convictions for aggravated felonies. U.S.S.G. App. C, Amend. 375 (1991). The Reason for the Amendment states the 16 point enhancement replaces the previous recommendation to courts to depart upward when the defendant has a prior aggravated felony. *Id*. Essentially taking the discretion away from the court and making the enhancement mandatory. No other explanation is provided.

The Commission next changes the guideline in 1997. This change expands the definition of an aggravated felony and also creates a 4 point enhancement if the defendant has various misdemeanors or lesser felonies which serve as the predicate convictions. U.S.S.G. App. C, Amend. 562 (1997). The Commission made these changes in response to Congress's immigration legislation in 1996.

The Commission further refined the § 2L1.2 enhancements in 2001. It created the graduated enhancement we see today from 4 points to 8, to 12, and to 16 based on the categorical serious nature of the prior conviction. The Commission made this change to reflect the departures which courts were granting, especially in border districts, due to the broad definition of aggravated felony under 8 U.S.C. § 1101(a)(43). While this change formalized a common departure, it also deleted the recommendation for such a departure which had been included previously in the application notes. No other significant changes have been made.

Despite the inclusion of a reason in every amendment to the guidelines, the reasons provided for these changes do not address any substantive issues regarding the seriousness, or lack thereof,

of the current reentry offense. The vacuum of justification should trouble the Court because a crime which had an offense level of 8, in 1988, now carries an offense level of 24. Neither the Commission nor Congress has explained this increase.

2. Criminal Convictions

Mr. Lopez has three convictions counting for points against his criminal history category. The first two convictions are from California offenses in 1992 and 1993; the third is a Rhode Island conviction for possession of false identification in 2006. The net result of the calculation under the guidelines places Mr. Lopez into category IV with 8 points.

3. Advisory Guideline Range and § 3553(a)

The advisory guideline range here is 57- 71 months of incarceration based on an offense level of 21 in criminal history category IV. The Court must still analyze whether that range comports with its primary sentencing concerns under § 3553(a). Considering Mr. Lopez's criminal history, this sentencing range cannot reasonably be justified.

The statute requires the Court to consider Mr. Lopez's background including his prior convictions. His drug convictions here are acutely attenuated by time and seriousness. Although double counting of the drug conviction against both the criminal history and the offense level is allowed, the Court must consider if that makes appropriate sense here. Additionally, while the Commission is tasked to study the efficacy of its guideline regime; there is no evidence from study or data that this guideline has any deterrent value, is tied to any particular rehabilitation, or promotes respect for the law. The Court must find that the guideline range does meet those requirements in order to impose such a sentence.

The Court must also consider and rationalize the continuous upturn in illegal reentry guideline sentencing in particular application to Mr. Lopez. The original offense level for illegal reentry was 6 which corresponded to past practice and also to the United States Parole Commission Guidelines. *See* Robert J. McWhirter and Jon M. Sands, *Does the Punishment Fit the Crime? A Defense Perspective on Sentencing in Aggravated Felon Reentry Cases*, 8 Fed. Sent R. 275, § II. B. (1996); United States Sentencing Commission, Supplemental Report on the Sentencing Guidelines, 45 (1987). The result of the consistent increase has been the near tripling of average sentences for aliens who return without permission after prior felony convictions. United States Sentencing

Commission, Fifteen Years of Guideline Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, 61-65 (November, 2004). Although the increase partially represents the implementation of the aggravated felony definition in the Immigration Code into the guidelines, the graduated enhancement system, in particular the points, is a completely arbitrary assignment of punishment. Plainly the Court can find that certain felons are more dangerous to the community than others based on their prior convictions and their behavior after they return, but that logic does not translate into a definitive point system for enhancements. Further, the Commission has not conducted any study that showed the need for the enhancements, the efficacy of the enhancements, or the success of this enhancement regime in promoting the purposes of sentencing under § 3553(a). In fact, there is no data which justifies this guideline in general or in specific application here to Mr. Lopez's circumstance.

D. Nature of the Offense

Illegal reentry on its face appears to be a serious felony offense carrying up to 20 years in prison. In reality the seriousness of this offense can only be determined by looking at the individual facts and circumstances of each case. The categorical seriousness of the predicate convictions set the guideline range, but vary wildly as to actual culpability.[5] Here, Mr. Lopez qualifies for the most serious enhancement under § 2L1.2 for selling a $20 bag of cocaine over 14 years ago. The seriousness of Mr. Lopez's offense of reentry is mitigated by the smallness and age of his predicate. After Mr. Lopez came back to the United States he did not return to using drugs or selling drugs to support his habit; he went to work. He worked in manufacturing and then was moderately successful managing a fast food restaurant. His subsequent crime was tied to his effort to legitimize his driving and his status as an illegal alien. There is nothing inherently dangerous or egregious about either of those reasons which inflates the seriousness of his reentry offense. Ultimately the Court should find that Mr. Lopez's offense was not particularly serious because he did not present a danger to the

[5] For example, a murder, a drug trafficking charge involving 25 kilos of cocaine with a ten year jail sentence, and a Massachusetts misdemeanor assault and battery charge all carry the 16 point enhancement under U.S.S.G. § 2L1.2. Assault and battery under Massachusetts law which carries up to 2 ½ years in jail, thus qualifying such a conviction under the guidelines as a crime of violence.

community upon his return, and any danger he presented based on his drug issues in the early 1990's has been tempered by the passage of time.

E. The Minimally Sufficient Sentence

The sentencing statute directs the Court to impose a parsimonious sentence which supports the purposes of sentencing: just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a). Just punishment relates back to the seriousness of the offense, above, but the other issues of deterrence, incapacitation, and rehabilitation, also fail to support the advisory guideline range recommended here.

The issue of deterrence is difficult to assess when the offense is illegal reentry. The overwhelming reason for defendants to return to the United States is economics. People come from around the world, both legally and illegally, to take advantage of opportunities which are simply not available in their home countries. The prospect of incarceration has no effect on the individual's economic circumstance. Here, Mr. Lopez was forced to make an economic decision to come back to the United States to earn enough money to pay for his daughter's medical needs. Potential imprisonment was not necessarily part of that decision making process. Also, there is no support for the notion that a longer sentence has more deterrent value. *See* United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, 11-16, Ex. 12 (May, 2004). Specifically for Mr. Lopez, his 15 months of custody thus far has served as deterrent enough because he has been unable to help his family at all during that time. Further incarceration will not serve to increase any deterrent value of this sentence.

The purpose of incapacitation serves to punish a defendant as well as protect society from the individual. Neither reason justifies the guideline recommendation in this case. Here there is no danger to the public and a longer sentence actually works against the interests of the public. The Bureau of Prisons will assign Mr. Lopez to one of its institutions to serve his sentence. But, the BOP does not provide the same education, work, or rehabilitation opportunities to aliens as it does for citizens. The net effect is that the dead time an alien spends in custody is simply warehousing. That warehousing costs the taxpayers approximately $2500 per prisoner per month. Knowing that no effort will be expended to rehabilitate alien prisoners, and that they will be deported at the end of

their sentence, the costs of incarcerating Mr. Lopez (in excess of $100,000 for a guideline sentence) cannot be described as in the public's interest. Further, mere warehousing also cannot be described as promoting the purposes of sentencing.

When determining the minimally-sufficient sentence, the Court must basically ask whether a more severe sentence would achieve greater justice, deterrence, incapacitation, or rehabilitation. In Mr. Lopez's situation, under these circumstances, a guideline sentence cannot be justified. Mr. Lopez's recommendation of 24 months incarceration more fairly addresses the purposes of sentencing under § 3553(a) without inanely saddling the public with the cost of his incarceration.

## IV. Conclusion

For all of these reasons, Mr. Lopez asks the Court to impose a sentence (below the suggested advisory guideline range) of 24 months.

Respectfully submitted
Rigoberto Lopez-Fuentes
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this memorandum was filed electronically with a copy to Heather McLoughlin, United States Probation Officer, and Sandra Beckner, Assistant United States Attorney, on November 21, 2007.

/s/ Kevin J. Fitzgerald